**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Del Mar Land Partners, LLC,<br><br>              Plaintiff,<br><br>    vs.<br><br>Stanley Consultants, Inc.<br><br>              Defendant. | No. CV-11-08013-PCT-PGR<br><br>ORDER |

Pending before the Court is Defendant Stanley Consultants, Inc.'s Motion for Summary Judgment as to Plaintiff's Amended Complaint Pursuant to FRCP 56 (Doc. 80) and Motion for Summary Judgment as to Defendant/Counterclaimant's Counterclaim Pursuant to FRCP 56 (Doc. 86). Having considered the parties' memoranda in light of the relevant record, the Court finds that there are no genuine issues of material fact and that the defendant is entitled to summary judgment in its favor as a matter of law pursuant to Fed.R.Civ.P. 56 on the plaintiff's two remaining claims in its Amended Complaint and on the defendant's breach of contract counterclaim.[1]

---

[1] Although the parties have requested oral argument as to both motions, the Court concludes that oral argument would not aid the decisional process.

Background

This action arises from two contracts between the parties, a Professional Services Agreement ("Master Agreement") entered into in October of 2006 and a Confirmation and Authorization for Work contract ("Addendum") entered into in January of 2007, which concerned civil engineering consulting services the defendant was to provide to plaintiff Del Mar Land Partners, LLC in connection with its development of its 324-lot residential real estate project known as Lake Mead Rancheros Units 4 & 5 located in Mohave County, Arizona.

In its Amended Complaint (Doc. 8), which is based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332, the plaintiff raised claims for breach of contract, negligent misrepresentation, fraud, and unjust enrichment. In previous orders, the Court dismissed the plaintiff's negligent misrepresentation claim, *see* 2011 WL 2692959 (D.Ariz. July 12, 2011), and the plaintiff's fraud claim, *see* 2012 WL 1019066 (D.Ariz. March 26, 2012), on the ground that both of these tort claims were barred by Arizona's economic loss doctrine.

In its Counterclaim (Doc. 24), the defendant raised claims for breach of contract and for declaratory relief.

Discussion

I. Summary Judgment as to the Amended Complaint

A. Breach of Contract Claim

The defendant seeks summary judgment in part on the plaintiff's breach of contract claim, the First Cause of Action in its Amended Complaint. The Master Agreement stated that the defendant "shall perform professional services as stated in Exhibit 1." Exhibit 1 sets forth in its "Scope of Services" section the several

professional services that the defendant would provide to the plaintiff.[2]  The purpose of these engineering and consulting services from the defendant was to enable the plaintiff to obtain the necessary approvals from state agencies, in particular a Sanitary Facilities Certificate from the Arizona Department of Environmental Quality, so that the plaintiff could apply for a Public Report from the Arizona Department of Real Estate, which was required before it could begin closing sales of its lots to the public.  The gist

---

[2] The Master Agreement stated in relevant part as follows:

Stanley Consultants Inc. agrees to perform the following Scope of Services:

I. PROFESSIONAL SERVICES

    A. Consultant will submit reports to Client and to ADWR [Arizona Dept.of Water Resources] and ADEQ [Arizona Dept. of Environmental Quality].  Client will be responsible for coordination with his Title Company for submittal of the application for a Public Report to the Arizona Department of Real Estate.
    B. <u>Water Supply Report (ADEQ)</u>: Consultant will research state and county records for data related to existing water wells.  Based on this information and discussions with local well drilling contractors, the Consultant will prepare a letter to ADEQ addressing the following options for water supply[:] 1) individual private wells, 2) trucked water, 3) common wells, and 4) community water system.
    C. <u>Water Adequacy Application (ADWR)</u>: Consultant will prepare an application for submittal to ADWR for a determination of water adequacy.
    D. <u>Flood and Drainage Report</u>: Consultant will review FEMA maps of the area and identify areas with flood zones.  A report will be prepared that identifies lots affected by flood zones.  Hydrology study/drainage analysis is not part of this scope.
    E. <u>Soils Report</u>: Consultant will prepare a soils report which will be prepared based on a review of Mojave County Soil Maps.  The report will identify general soil types and conditions.  Atypical soil conditions will be identified and associated with specific lots.  Wastewater disposal in this area will be analyzed.

of the plaintiff's breach of contract claim is that the defendant failed to properly submit compliance reports to the appropriate state agencies, such as by submitting a mere letter to ADEQ in support of the required Sanitary Facilities Certificate which ADEQ refused to process because the letter did not comply with the formal application requirements for the certificate, and that the defendant failed to timely complete its work.

The Court concludes that there is no triable issue of fact regarding whether the defendant failed to perform the contracted-for engineering and consulting services. This is so because the admissible evidence of record and the justifiable inferences arising from that evidence, all viewed in the plaintiff's favor, is insufficient to permit a jury to reasonably find that the defendant did not eventually provide all of the services the plaintiff contracted for. With regard to the scope of work required by the Master Agreement, the plaintiff admitted in its statement of facts that a Sanitary Facilities Certificate was eventually issued by ADEQ, and Warren Church, the plaintiff's managing member and the person who negotiated and signed the contracts with the defendant, admitted at his deposition that the defendant submitted the application for the Sanitary Facilities Certificate, that the defendant submitted a letter to ADEQ addressing options for the water supply, that it prepared an application for submittal to ADWR for determination of water adequacy, that it prepared a flood and drainage report, and that a soil report was prepared; the plaintiff's answers to the defendant's requests for admissions also admit that this contractually-required work was completed by the defendant. With regard to the scope of work required by the Addendum, Church testified that the work was eventually completed by the defendant and that he was not contending that the defendant failed to perform any term or condition of the Addendum. Furthermore, the plaintiff has not submitted any expert or other significant probative

evidence establishing that the engineering and consulting services that the defendant undertook in response to the contracts fell below the applicable standard of care for such services.

The dispositive issue is instead whether the defendant breached the contracts by performing its professional services in an unreasonably untimely manner. The plaintiff's position is that the defendant verbally represented prior to the signing of the Master Agreement that it would take 90 days for it to perform the work being contracted for, but that such services in fact took nine months to complete, resulting in the plaintiff suffering over $7 million in damages because the delay caused buyers of some lots to cancel their purchase agreements, caused the plaintiff to be unable to sell other lots, and reduced the ultimate sales price for other lots because of a declining real estate market.

It is undisputed that neither the Master Agreement nor the Addendum contained a time of performance provision or a provision stating that time was of the essence in the performance of the defendant's services.[3] The defendant argues that no such provision may be read into the unambiguous contracts pursuant to the parol evidence rule as adopted in Nevada because the Master Agreement contained an integration clause in Paragraph 4.13 of Exhibit 3 to the contract that stated that "[t]his Agreement represents the entire agreement between the parties and may be amended only by

---

[3] The Court notes that the only provision in the Master Agreement even mentioning a time of completion is in Exhibit 2, which deals with compensation, which provides that "[o]nce contracted, the fees herein are valid for a period of one year. If the services in this contract have not been completed by October 17, 2007, the fee amounts will be subject to renegotiation."

written instrument signed by both parties[,]"[4] and that this provision carried over into the Addendum by the provision in that contract that stated that "[a]ll other terms and conditions of the <u>Master Agreement of 10-19-06 will prevail</u>." (Emphasis in original.)

As noted by the defendant, and inexplicably ignored by the plaintiff, the Court determined in an earlier opinion in this action that the interpretation of the contracts is governed by Nevada law pursuant to the choice of law provision in the Master Agreement, Paragraph 4.4 of Exhibit 3, which stated that "Controlling Law. Agreement shall be governed by Nevada law." Nevada law provides that "a fundamental principle of contract law is that the time of performance under a contract is not considered of the essence unless the contract expressly so provides or the circumstances of the contract so imply." <u>Mayfield v. Koroghli</u>, 184 P.3d 362, 366 (Nev.2008) (footnote omitted.)

While the plaintiff does not expressly argue it, the Court presumes that the plaintiff is contending that the circumstances of the making of the Master Agreement made it apparent that the parties intended time to be of the essence. In support of this implied contention, the plaintiff relies on the deposition testimony and declaration of Warren Church and the declaration of Bruce Silver, a former employee of the defendant who was involved in the plaintiff's project. The gist of this evidence is that Church verbally told the defendant's representative Bruce Darnell prior to the signing of the Master Agreement that the plaintiff was anxious to get the Public Report from ADRE so that it could close lot sales during the then hot real estate market, that Darnell told Church that the defendant would get the Sanitary Facilities Certificate issued within 90 days of the signing of the contract, and that based on Darnell's representation

---

[4] The Master Agreement provided in part that the defendant "shall provide professional services in accordance with the terms and conditions stated in Exhibit 3." Exhibit 3, entitled "Standard Terms and Conditions" contained two pages of provisions governing various aspects of the Master Agreement.

- 6 -

Church expected the defendant to complete its work in approximately late January or early February of 2007.[5]

Under the governing Nevada law, which the plaintiff nowhere discusses, "parol evidence may not be used to contradict the terms of a written contractual agreement. The parol evidence rule forbids the reception of evidence which would vary or contradict the contract, since all prior negotiations and agreements are deemed to have been merged therein." Kaldi v. Farmers Insurance Exchange, 21 P.3d 16, 21 (Nev.2001) (internal quotations marks omitted.)  While Nevada law recognizes that

---

[5]

For example, Church stated in his declaration:

7. As time was of the essence in obtaining the required approvals, I told [defendant's representative] Chris Darnell that this work [the obtaining of the Sanitary Facilities Certificate from ADEQ] was the last significant piece we needed to complete in order to obtain the Public Report, and that we were anxious to get that Public Report and close sales in the hot real estate market at the time.  Mr. Darnell indicated that would not be a problem, that [the defendant] had extensive knowledge with this process in Arizona, and that [the defendant] could complete the work and have the Sanitary Facilities Certificate issued within 90 days of our signing a contract with [the defendant.] Based on his representations as to [the defendant's] ability to timely deliver the Sanitary Facilities Certificate we needed, I caused [the plaintiff] to engage [the defendant] in October of 2006, and expected the work to be complete in approximately January of 2007.

Bruce Silver, the former employee of the defendant, stated in his declaration:

8. When we were negotiating with Mr. Church, he asked how long it would take [the defendant] to complete its work. He explained that time was of the essence, and that he wanted to obtain his Public Report as soon as possible in order to start selling lots to take advantage of the rising real estate market in Arizona at the time.  Mr. Darnell and myself told Mr. Church that it should take no more than 90 days for [the defendant] to complete all of its work. ...

mere silence on an issue, for which no contractual provision is made at all, does not itself create an ambiguity warranting consideration of parol evidence, *id.* at 22, it does allow for the admission of extrinsic oral evidence to prove the "existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms[.]" *Id.* at 22. However, the plaintiff does not specifically make such an argument and, in any case, the admissible evidence of record, viewed in the plaintiff's favor, does not support the existence of a separate oral agreement regarding the timing of the defendant's performance. In fact, the plaintiff has conceded that it had no separate oral agreements with the defendant and that the two written contracts are the only contracts on which it bases its claims against the defendant.[6] Since the plaintiff has not established that the facts of this case fall within the oral agreement exception to Nevada's parol evidence rule, nor has it established any ambiguity in the contracts, the Court concludes that the plaintiff may not use parol evidence to add a "time is of the essence" provision to the parties' contracts. The Court further concludes that a jury could not reasonably find from the admissible, non-parole evidence of record, all viewed in the plaintiff's favor, that the plaintiff has established that the circumstances of the contracts implied that time was of the essence. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The plaintiff cursorily argues, citing only to Arizona law, that the evidence provided by Warren Church creates at least a material issue of fact as to whether the

---

[6] The defendant's statement of fact no. 29 (Doc. 99) in support of its summary judgment motion regarding the Amended Complaint stated: "Plaintiff has admitted the existence and identity of the Project Contracts [the Master Agreement and Addendum] as the only two contracts on which Plaintiff bases its claims against [the defendant], and that Plaintiff had no other oral agreements with [the defendant]." In its statement of facts (Doc. 94-6), the plaintiff responded to the defendant's SOF no. 29 by stating: "Undisputed."

1  defendant completed its work in a timely manner.  Nevada law provides that "[i]f time
2  is not of the essence, the parties generally must perform under the contract within a
3  reasonable time, which depends upon the nature of the contract and the particular
4  circumstances involved.  Nevertheless, in the absence of a clause making time of the
5  essence, a party's failure to perform within a reasonable time generally does not
6  constitute a material breach of the agreement." Mayfield v. Koroghli, 184 P.3d at 366
7  (internal footnotes and quotation marks omitted.)  The Court, construing the plaintiff's
8  argument as being that the defendant materially breached the contracts because its
9  delay in performance was unreasonable, cannot conclude that the plaintiff, which bears
10 the burden of proof, has created a triable issue of fact as to this issue.  While Warren
11 Church testified that he expected the defendant to complete its work some six months
12 earlier than it did, the plaintiff has not provided significant probative evidence from
13 which a jury could reasonably find that this delay was unreasonable under the
14 circumstances.  What is missing from the plaintiff's submittal is something more than
15 merely colorable evidence as to how long it reasonably should have taken an
16 engineering company in the defendant's position to perform all of the services
17 contracted for. See United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d
18 1539, 1542 (9th Cir.1989) ("Mere submission of affidavits opposing summary judgment
19 is not enough; the court must consider whether the evidence presented in the affidavits
20 is of sufficient caliber and quantity to support a jury verdict for the nonmovant.  A
21 scintilla of evidence, or evidence that is merely colorable or not significantly probative,
22 is not sufficient to present a genuine issue as to a material fact.") (Internal citation,
23 quotation marks and italics omitted.)

24       B. Unjust Enrichment Claim
25       The defendant also seeks summary judgment on the plaintiff's unjust enrichment
26

claim, the Fourth Cause of Action in its Amended Complaint.[7] The defendant argues, and the plaintiff concedes, that under both Nevada and Arizona law an unjust enrichment claim is improper if there is an express written contract governing the parties' agreement. *See* Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975, 942 P.2d 182, 186 (Nev.1997) ("An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement."); Brooks v. Valley National Bank, 548 P.2d 1166, 1170 (Ariz.1976) ("[W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.")

The plaintiff, in a cursory argument that is bereft of any cogent legal argument or citation to any supporting case law[8], merely states in opposition that "Plaintiff has alleged facts, which if shown, may result in the Court voiding part or all of the agreements between the parties. This theory of recovery is alleged in the alternative, if the Court voids the contract for fraud, bad faith, unconscionability, mistake, etc." The Court concludes that the defendant is entitled to summary judgment on the unjust enrichment claim because the parties' relationship was governed by two express contracts and the admissible evidence of record and the justifiable inferences from that

---

[7] In this claim, the plaintiff alleges that the defendant should be forced to disgorge the full value of the payments made to it by the plaintiff because the "[d]efendant failed to timely and competently deliver its agreed-upon services."

[8] As the Court pointed out to the plaintiff in a previous order in this action, "[a] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. We will not do his research for him." Pelfresne v. Village of Williams Bay, 917 F.2d 1017, 1023 (7th Cir.1990) (internal citations omitted).

evidence, viewed in the plaintiff's favor, is insufficient to create a triable issue of fact as to the enforceability of the parties' contracts, or a triable issue of fact as to whether the defendant did not eventually perform all of the engineering and consulting services the plaintiff contracted for.

## II. Summary Judgment as to the Counterclaim

The defendant further seeks summary judgment on its counterclaim for breach of contract, its First Cause of Action, wherein it alleges that the plaintiff breached its contractual obligations by failing to pay the defendant in full for the services it rendered under the contracts in that a principal balance of $17,592.75 remains unpaid and overdue.[9]

The plaintiff, in a cursory response that is not supported by any cogent analysis or citation to any legal authority, argues only that

> [i]f Plaintiff states a claim for breach of contract, clearly, [the defendant] cannot be entitled to a judgment on the Counterclaim for money allegedly owed under that same contract. Any such finding as to liability must await a final determination as the fact and amount of any set-off (or a determination that [the plaintiff] is owed money greater than the claim of [the defendant.]) Plaintiff has also submitted evidence to create an issue of fact as to whether [the defendant] can recover due to its own[] fraud,

---

[9] The defendant also seeks summary judgment on its counterclaim for declaratory relief, its Second Cause of Action, wherein it seeks a declaration that the limitation of liability provision in the Master Agreement, § 4.12 of Exhibit 3 to the contract, is enforceable and limits its liability to the plaintiff to no more than "$100,000 or the total compensation received by [the defendant], whichever is greater."
  The Court concludes that this portion of the defendant's counterclaim-related summary judgment motion, which the plaintiff failed to address in its response, is moot since the Court is granting the defendant's summary judgment motion related to the plaintiff's breach of contract and unjust enrichment claims.
  Furthermore, to the extent that the plaintiff's mere mention of such legal theories as unconscionability, mistake, unclean hands, etc., is meant to be directed as anything other than the enforceability of the limitation of liability provision, the Court concludes it need not reach those theories since the plaintiff has in effect made no attempt to provide any legal analysis of their applicability to this action.

>bad faith, unclean hands etc., based on its actions as described by Warren Church.

Since the Court has previously dismissed the plaintiff's fraud and negligent misrepresentation claims and has concluded herein that the defendant is entitled to summary judgment on the plaintiff's breach of contract claim and unjust enrichment claim, the only issue to be resolved as to the breach of contract counterclaim is whether there is any triable issue as to the amount the defendant is still owed. The Court concludes that there is not.

In support of its breach of contract counterclaim, the defendant has in part submitted the declarations of Henry F. Marquard, the defendant's chief legal officer, and David Frohnen, the defendant's former vice president/area manager who oversaw the defendant's Kingman, Arizona office that was responsible for performing the professional services contracted for by the plaintiff and who signed the two contracts on the defendant's behalf. While the plaintiff has submitted specific evidentiary objections to Marquard's declaration, it has not done the same for Frohnen's declaration and the Court concludes that Frohnen's declaration, together with the defendant's relevant invoices, provide significant probative evidence sufficient to establish that the defendant invoiced the plaintiff for the requested principal amount of $17,592.75 and that this amount remains unpaid, and the plaintiff has not submitted any significant probative evidence challenging the accuracy of the amount at issue. Therefore,

IT IS ORDERED that defendant Stanley Consultants, Inc.'s Motion for Summary Judgment as to Plaintiff's Amended Complaint Pursuant to FRCP 56 (Doc. 80) is granted and that plaintiff Del Mar Land Partners, LLC's Breach of Contract claim, the First Cause of Action of the Amended Complaint and its Unjust Enrichment and

Constructive Trust claim, the Fourth Cause of Action of the Amended Complaint, are both dismissed.

IT IS FURTHER ORDERED that defendant Stanley Consultants, Inc.'s Motion for Summary Judgment as to Defendant/Counterclaimant's Counterclaim Pursuant to FRCP 56 (Doc. 86) is granted as to the defendant's Breach of Contract counterclaim, the First Cause of Action in the Counterclaim, and is denied as moot as to the defendant's Declaratory Relief counterclaim, the Second Cause of Action in the Counterclaim.

IT IS FURTHER ORDERED that defendant Stanley Consultants, Inc. shall, after consultation with the plaintiff, submit a proposed form a judgment no later than October 7, 2013.  If the plaintiff cannot agree with the defendant's proposed form of judgment, the plaintiff shall submit its objections to that proposal no later than October 21, 2013.

DATED this 27th day of September, 2013.

Paul G. Rosenblatt
United States District Judge